Nos. 22-1118 & 22-1168

In the United States Court of Appeals for the Tenth Circuit

————————————

RACHEL BRAYMAN, et al.,

Plaintiffs-Appellees,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
For the District of Colorado
The Honorable William J. Martinez
D.C. No. 18-cv-00550-WJM-NRN

————————————

**DEFENDANT-APPELLANT'S REPLY BRIEF**
————————————

Respectfully submitted,

Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
303.629.6200
mphogan@littler.com
jharpole@littler.com
tcarroll@littler.com

*Counsel for Defendant-Appellant*
*KeyPoint Government Solutions, Inc.*

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN  55402
612-313-7645
jkalk@littler.com

Everett Clifton Martin
LITTLER MENDELSON, P.C.
633 West Fifth Street
Los Angeles, CA  90071
213-443-4212
cmartin@littler.com

**ORAL ARGUMENT IS REQUESTED**

GLOSSARY ................................................................................................1

INTRODUCTION ......................................................................................3

ARGUMENT ..............................................................................................4

I.      The Central District of California recently provided an example of
        how these claims should be analyzed. ............................................4

II.     Plaintiffs misrepresent the district court's opinion. .........................6

III.    Plaintiffs cannot show a link between performance standards and meal
        and rest-break scheduling. ...............................................................8

IV.     *Dukes* applies to wage-and-hour class claims. .............................10

        A.      Numerous courts have applied *Dukes* to wage claims. ......................10

        B.      *Dukes* requires more than *ipse dixit*. ...................................13

        C.      A non-existent "fact" is not a "common fact." ...................................15

V.      Plaintiffs' proposed use of representative proof violates KeyPoint's
        rights. ..............................................................................................19

        A.      "Representative" proof must be statistically representative. .............19

        B.      Plaintiffs' proposed "representative" proof fails. ...............................21

VI.     There are no grounds upon which to affirm the district court's order
        denying KeyPoint's motion to compel arbitration. .....................................25

CONCLUSION ..........................................................................................28

CERTIFICATE OF COMPLIANCE .....................................................30

CERTIFICATE OF DIGITAL SUBMISSION ......................................31

CERTIFICATE OF SERVICE ................................................................32

ATTACHMENTS

Pittman v. CACI International Inc., 2:21-cv-02044-CJC-JEM,
        Order Denying Class Certification – ECF No. 91……………….…………1

Pittmon v. CACI International Inc., 2:21-cv-02044-CJC-JEM,
        Declarations – Exhibit 9 to Motion for Class Certification (ECF No. 69) ....2

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v Michaels Stores, Inc.*,
No. CV 09-1939-GW (AGRx), 2013 U.S. Dist. Lexis 202734
(C.D. Cal. Mar. 4, 2013) ........................................................................12

*Alcantar v. Hobart Serv.*,
800 F.3d 1047 (9th Cir. 2015) ..............................................................11

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ................................................................27

*Balasanyan v. Nordstrom, Inc.*,
294 F.R.D. 550 (S.D. Cal. 2013) ..........................................................23

*In re Bank of Am. Wage & Hour Emp't Litig.*,
286 F.R.D. 572 (D. Kan. 2012) ............................................................11

*Boyd v. Bank of America Corp.*,
300 F.R.D. 431 (C.D. Cal. 2014) ..........................................................13

*Brinker Rest. Corp. v. Sup. Ct.*,
53 Cal. 4th 1004 (2012) ................................................................*passim*

*Campbell v. City of L.A.*,
903 F.3d 1090 (9th Cir. 2018) ................................................................8

*Carrasco v. C.H. Robinson Worldwide, Inc.*,
No. 1:13-cv-01438-LJO-SAB, 2013 U.S. Dist. LEXIS 169515
(E.D. Cal. Nov. 27, 2013) .....................................................................12

*CGC Holding Co., LLC. v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) ............................................................14

*Cole v. CRST, Inc.*,
317 F.R.D. 141 (C.D. Cal. 2016) ..........................................................11

*Davidson v. O'Reilly Auto Enters., LLC*,
968 F.3d 955 (9th Cir. 2020) ................................................................11

iv

*Daye v. Cmty. Fin. Serv. Ctrs., LLC*,
    313 F.R.D. 147 (D.N.M. 2016)............................................................24

*Dilts v. Penske Logistics, LLC*,
    267 F.R.D. 625 (S.D. Cal. 2010) ......................................................20

*Dilts v. Penske Logistics, LLC*,
    315 F.R.D. 591 (S.D. Cal. 2016) ...............................................*passim*

*Duran v. U.S. Bank N.A.*,
    59 Cal. 4th 1 (2014) .................................................................20, 23

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................19

*Garcia v. Tyson Foods, Inc.*,
    770 F.3d 1300 (10th Cir. 2014) ....................................................21, 22

*Gonzalez v. Millard Mall Servs.*,
    281 F.R.D. 455 (S.D. Cal. 2012) ......................................................11

*Howard v. CVS Caremark Corp.*,
    No. CV 13-04748 SJO, 2014 U.S. Dist. LEXIS 172406 (C.D. Cal.
    Dec. 9, 2014)....................................................................................11

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ................................................21, 22, 23

*Jimenez v. Allstate Ins. Co.*,
    No. LA CV 10-08486 JAK (FFMx), 2012 U.S. Dist. LEXIS
    65328, at *47 (C.D. Cal. Apr. 18, 2012). ........................................22

*Le v. Walgreen Co.*,
    No. CV 18-1548-DOC (ADS), 2020 U.S. Dist. LEXIS 121118
    (C.D. Cal. Apr. 27, 2020) .................................................................13

*McCaster v. Darden Rests., Inc.*,
    845 F.3d 794 (7th Cir. 2017) ................................................14, 15, 16

*Monroe v. FTS USA, LLC*,
    860 F.3d 389 (6th Cir. 2017) ....................................................21, 23

*Moore v. International Cosmetics & Perfumes, Inc.*,
    No. ED CV 14-1179 DMG, 2016 WL 7644849 (C.D. Cal. Mar. 17,
    2016) ......................................................................................................18

*Nutraceutical Corp. v. Lambert*,
    139 S. Ct. 710 (2019)............................................................................25

*Pierce v. Wyndham v. Vacation Resorts, Inc.*,
    922 F.3d 741 (6th Cir. 2019) ...............................................................23

*Pittmon v. CACI International Inc.*,
    No. 2:21-cv-02044-CJC-JEM (C.D. Cal. Aug. 11, 2022)..........................*passim*

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)..........................................................................26, 28

*Santos v. UPS*,
    No. 18-cv-03177-EMC, 2020 U.S. Dist. LEXIS 216176 (N.D. Cal.
    Nov. 18, 2020) ......................................................................................20

*Senne v. Kan. City Royals Baseball Corp.*,
    315 F.R.D. 523 (N.D. Cal. 2016)....................................................10, 24

*Shook v. El Paso Cty.*, 386 F.3d 963 (10th Cir. 2004) ………………………..4, 6, 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................*passim*

*Washington v. Joe's Crab Shack*,
    271 F.R.D. 629 (N.D. Cal. 2010)..........................................................19

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007)................................................12

*York v. Starbucks Corp.*,
    No. CV 08-07919 GAF, 2012 U.S. Dist. LEXIS 190086 (C.D. Cal.
    Sep. 12, 2012) ......................................................................................11

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*....................................7, 8, 22, 23

**Other Authorities**

Fed R. Civ. P. 23 ...............................................................................*passim*

Fed. R. Civ. P. 30 ...........................................................................18

Fed. R. Civ. P. 59 ...........................................................................26

U.S. Const. amend. I .......................................................................26

## GLOSSARY

1. **Arbitration Plaintiffs** – California plaintiffs who signed Arbitration Agreements subject to KeyPoint's motion to compel arbitration at issue in Case No. 22-1118.

2. **Arbitrator Decides Clause** – shorthand for the Arbitration Agreement's clause that "the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement." *E.g.*, App. Vol. II at 325 § 1.

3. **California Named Plaintiffs –** Adriana Ponce and Dana McCarthy, who are named Plaintiffs who worked in California, opted into the FLSA

collective and moved for Rule 23 certification of the California state-law claims.

4. **California Plaintiffs –** 64 plaintiffs who opted into the FLSA collective who worked in California.

5. **FAA** – Federal Arbitration Act

6. **FI** – Field Investigator

7. **FLSA** – Fair Labor Standards Act

8. **FM** – Field Manager

9. **OTC** – Off-the-clock

10. **Pending Litigation Exception –** shorthand for the Arbitration Agreement's clause that "this Agreement does not apply to any currently pending litigation between Employee and [KeyPoint] as of the date this Agreement is signed by Employee, and this agreement does not apply to any class, collective, or other representative action proceeding that is currently pending as to which you are a current or purported class member as of the day this Agreement is signed by Employee." *E.g.*, App. Vol. II at 325 § 2.

## INTRODUCTION

The district court here should have rejected class certification, having no evidence of a companywide or California-wide ***unlawful*** policy. Faced with that undeniable and inconvenient (for them) fact, Plaintiffs attempt – in direct contravention of the standard announced in *Dukes* – to dress up unsanctioned and at best anecdotal allegations of unilateral employee behavior ***contrary*** to company policy "as policy" disapproved in *Dukes*. They fail. Perhaps recognizing that failure, Plaintiffs pivot, protesting that *Dukes* does not fully apply to wage and hour claims – again, contrary to a host of legal authorities and in apparent reliance on authorities that are largely inapplicable to the facts here, or that were ***subsequently reversed***.

Critically, Plaintiffs fail to connect KeyPoint's lawful policies to the alleged violations of California law. Plaintiffs' defense of certification of the meal and rest-break classes offers only that the claims are "part and parcel" with the overtime claims, an argument by label that fails not only as an exercise in logic, but substantively as well: Plaintiffs offer no common evidence of KeyPoint's alleged knowledge of meal and rest break violations. Perhaps sensing the thin ice on which they skate, Plaintiffs bury in a footnote a citation to a recent California district-court case that not only denied class certification of a nearly identical class, but also – and tellingly – noted that the precedent upon which the district court here decided the

issue is not the correct law. Ultimately, Plaintiffs fail to justify the district court's order granting Rule 23 class certification, and it must be reversed.

The same is true for the order denying KeyPoint's motion to compel arbitration. Plaintiffs offer no argument or authority to overcome or distinguish the binding Supreme Court precedent that controls here.

## ARGUMENT

### I.     The Central District of California recently provided an example of how these claims should be analyzed.

Plaintiffs rightly note, at footnote 4, that KeyPoint would cite to the recent decision in *Pittmon v. CACI International Inc.*, ECF No. 91, No. 2:21-cv-02044-CJC-JEM (C.D. Cal. Aug. 11, 2022), Attach. 2. Plaintiffs know this because (a) like KeyPoint, CACI employs work-from-home background investigators who set their own schedules, (b) plaintiff Pittmon's counsel is from the same law firm as Plaintiffs' counsel in this case, and made the same class-certification arguments there, and (c) the *Pittmon* court deemed the district court's certification decision in this case "of little value," noted that this court's prior *Shook* decision is obsolete, and denied class certification under California law for off-the-clock and meal and rest-break claims. *See Shook v. El Paso Cty.*, 386 F.3d 963 (10th Cir. 2004).

Indeed, the *Pittmon* court followed an analytic framework that the district court ought to have adopted here.  With respect to off-the-clock claims, the court held, "CACI cannot be reasonably held to have constructive knowledge of the time

worked off the clock if investigators were intentionally hiding their off-the-clock work for personal reasons." *Pittmon*, ECF No. 91 at 13-14. As the Plaintiffs did, the Pittmon plaintiffs argued that individualized inquiries are a "damages issue." The *Pittmon* court correctly responded: "[T]hese inquiries speak directly to CACI's *liability*. Whether CACI's production metrics actually exerted pressure on background investigator to work off-the-clock… in violation of CACI's written policies; whether supervisors exerted pressure on background investigators to not record their overtime directly; and whether CACI knew or should have known of off-the-clock work, all are questions that speak to whether CACI has violated California's wage and hour laws in the first place…" *Id.* at 14.

The *Pittmon* court denied certification of a meal and rest break claim because "Plaintiffs fail[ed] to present evidence of a consistent, coherent policy, whether written or not, that CACI fails to relieve its investigators of all work so that they may take their required meal and rest break claims…" *Id.* at 17. Though the plaintiffs, as here, pointed to production expectations as the reason investigators skipped meal and rest breaks, the court noted that it "sees no reasonable method for determining the validity of this claim without asking ***each*** investigator and ***each*** supervisor what

their experience was in taking meal and rest breaks and/or providing meal and rest breaks to investigators." *Id.* (emphases added).[1]

## II.     Plaintiffs misrepresent the district court's opinion.

As Plaintiffs spin it, the district court here "fully considered the parties' arguments and evidence, 'as well as the case law cited by each side,' including the seminal *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004 (2012) decision that outlines the elements of a California state law meal break claim." Resp. 32. But Plaintiffs' tale unravels upon inspection. First, the district court cited *Brinker* **once** as a "see also" string citation (alongside an Eastern District of New York case) for the generic proposition that uniform policies consistently applied can be grist for class treatment. App. Vol. XXX at 7893. The district court did not use the words "meal," "rest," or "break" in the same paragraph or ***at any point in the order following the citation to* Brinker**. The district court did not "fully consider" or apply *Brinker*—or any other California state-court case—to the off-the-clock or break claims. Moreover, *Brinker* does not set out the law on which Plaintiffs base their

---

[1]The *Pittmon* order also contains a detailed discussion of the evidence and legal authorities, citing to the California Labor Code and Wage Order provisions and elements of the claims, and noting that, under *Brinker,* employers "are not obligated to police meal breaks and ensure no work thereafter is performed." Consequently, ***the* Pittmon *court found the decision below in this [Brayman] action to be "of little value,"*** (*Pittmon*, ECF No. 91 at 20 fn.4) because it assumed the truth of the pleadings (citing to *Shook*) rather than conducting a rigorous analysis as required— ***the very basis of this appeal***.

claims; they are asserted under the California Labor Code and "Wage Order" regulations. The *Brinker* Court, unlike the district court here, ***interpreted*** those California laws.[2] The district court here ***never even cited the California Labor Code*** upon which all of Plaintiffs' California claims are based, nor did it analyze the elements of a claim under the code. Thus, Plaintiffs' assertion that "the district court properly considered the merits of the California claims" (Resp. 31) cannot be true.

In an exercise in transparent misdirection, Plaintiffs refer frequently to the district court's holdings regarding a different motion—KeyPoint's motion to decertify the ***FLSA*** action. But this appeal concerns the ***Rule 23*** certification of ***California Labor Code*** claims. Plaintiffs urge, "while the Rule 23 and FLSA certification standards differ, each party's legal theories and supporting evidence for certification and liability are substantially similar." Resp. 24. This is arrant nonsense. There are (and can be) no meal and rest-break claims under the FLSA; the Rule 23 requirements are different and the FLSA analysis is inapt because the FLSA

---

[2] Plaintiffs' assertion that KeyPoint "misstates California's actual meal and rest break requirements" is false. Resp. 37. KeyPoint quoted and analyzed the actual statute and regulations and *Brinker*. Plaintiffs ignore the statute and cite only to *Brinker*'s interpretation of the term "provide" instead.  Even as characterized by Plaintiffs, KeyPoint complied with the meal break obligation because it "relieved its employees of all duty" by authorizing them to arrange their own schedules to take breaks and requiring them to report in their timecards when they could not do so. Plaintiffs argue that "KeyPoint never truly relieved its investigators of all duty," absurdly suggesting that they were "on duty" when shopping, going to the dentist, taking children to school or soccer practice, and cooking dinner. App. Vol. XXIV at 6222-23 (63:23-64:20), 6240-41 (131:23-132:19).

standards for certification are more lenient than for Rule 23 claims. *Campbell v. City of L.A.*, 903 F.3d 1090, 1111-15 (9th Cir. 2018) (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)) ("the FLSA …imposes a lower bar than Rule 23").  Plaintiffs' attempt to essentially equate the district court's rationale for FLSA certification to the Rule 23 motion actually highlights that the district court did not perform the necessary "rigorous analysis" under *Dukes*, as a "rigorous analysis" is required for Rule 23 but ***not*** for FLSA actions. *Campbell*, 903 F.3d at 1115.[3]

## III.    Plaintiffs cannot show a link between performance standards and meal and rest-break scheduling.

Plaintiffs' Response fails to suggest any connection between performance standards and alleged missed breaks; it does not even suggest that KeyPoint implemented punitive measures or gave instructions that interfered with breaks. Employees working remotely, and in charge of their own schedules, could take lawful breaks and arrange their schedules around those breaks ***regardless*** of how much work they were assigned or the applicable performance benchmarks.

---

[3] Additionally, Plaintiffs suggest that *Shook* can be synthesized with *Dukes* (Resp. pp. 26-27). Not on the record in this case.  The district court below clearly erred by citing the *Shook* decision to justify its departure from the requirements of *Dukes*. The court below failed to conduct a "rigorous analysis" as required for Rule 23 certification; Plaintiffs cannot unring that bell with an inapt rationalization.

Plaintiffs' own evidence shows that KeyPoint's policies authorized and KeyPoint affirmatively encouraged breaks.

Even if, as they allege, Plaintiffs failed to take breaks due to their workload, that does not mean they could not have arranged their schedules differently so as to take breaks, *and they do not allege that they could not*. On the contrary, class members testified that they could *and did* arrange their schedules to take breaks. App. Vol. XXIV at 6222-23 (63:23-64:20), 6240-41 (131:23-132:19). Plaintiffs merely pleaded that performance expectations caused them to miss breaks; they objectively failed to demonstrate with evidence any causal relationship between the performance standards and meal or rest-break practices.[4]

Neither Plaintiffs nor the district court ever acknowledged this patent gap in evidence, and even now Plaintiffs have failed to address it.[5] The size of this gap can hardly be overstated. The evidence that Plaintiffs have put forth, and that they contend they will ultimately put forth at trial - which is not common proof, merely

---

[4] Plaintiffs' theory that KeyPoint encouraged under-reporting of meal and rest-break violations not only lacks any evidentiary support, it begs the question: if KeyPoint legally provided meal and rest breaks by making them available, there is nothing to report, so an incentive to "under-report" cannot prove *violations*. Further, there is no evidence that any class members were punished or discouraged from reporting being prevented from taking breaks.

[5] Plaintiffs offer a fig leaf: "The meal and rest break claims, too, are part and parcel of the common pressures that created the unwritten policy to work off the clock." Resp. 37. This incantation does not hold up to minimal scrutiny.

"representative" anecdotal evidence - cannot establish any meal or rest-period violations on a class basis.

The Northern District of California pointed out the inadequacy of this argument where plaintiffs sought to establish a "policy" through survey evidence: "[r]ather than merely filling in 'evidentiary gaps' in a situation where all of the employees were similarly affected by a uniform policy, ***Plaintiffs here are attempting to paper over significant material variations***." *Senne v. Kan. City Royals Baseball Corp.*, 315 F.R.D. 523, 583 (N.D. Cal. 2016) (emphasis added). Plaintiffs' attempt to "paper over" their inherently individual choices with less proof fails and class certification was inappropriate.

## IV. *Dukes* applies to wage-and-hour class claims.

## A. Numerous courts have applied *Dukes* to wage claims.

Plaintiffs assert that *Dukes* has "limited" applicability to wage and hour cases. Not so. *Dukes* holds that "[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In that putative Rule 23 discrimination case, the *Dukes* court concluded, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it

will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352 (emphasis in original). Plaintiffs assert that "KeyPoint cannot shoehorn in *Dukes*' focus on the question of 'why' to either Plaintiffs' overtime or meal and rest break claims." Resp. 45-47.

If KeyPoint is guilty of "shoehorning" the question of **why** class members missed meal and rest breaks into the *Dukes* framework, it is in good company. *See Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020) (affirming denial of certification of rest-break claim under *Dukes*); *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053-54 (9th Cir. 2015) (noting reasons for missing meal and rest breaks predominated over common questions).[6] Further, **Plaintiffs** are improperly "shoehorning" by making blanket statements about "overtime or meal and rest break

---

[6] *See also Dilts v. Penske Logistics, LLC*, 315 F.R.D. 591, 594 (S.D. Cal. 2016) (decertifying meal break claim because "the question of why an employee did not timely take a meal break is not subject to a common answer"); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 146 (C.D. Cal. 2016) (decertifying meal and rest-period classes under *Dukes*); *Howard v. CVS Caremark Corp.*, No. CV 13-04748 SJO 2014 U.S. Dist. LEXIS 172406 (C.D. Cal. Dec. 19, 2014), *aff'd*, 628 F. App'x 537 (9th Cir. 2016); *Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 462 (S.D. Cal. 2012) (applying *Dukes* in rejecting meal and rest break claims); *York v. Starbucks Corp.*, No. CV 08-07919 GAF (PJWx), 2012 U.S. Dist. LEXIS 190086, at *17-19 (C.D. Cal. Sep. 12, 2012) (Plaintiff's claim that he need only present evidence of common policies without knowing why breaks were missed was inconsistent with *Dukes* and *Brinker*); *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 589 (D. Kan. 2012) ("The evidence reflects a myriad of reasons why an employee might have performed off-the-clock work").

claims." Resp. 46. Off-the-clock overtime and break claims are not identical because where overtime is worked with the employer's knowledge, the work must be paid regardless of the reason. However, meal and rest breaks can be lawfully missed even with employer knowledge *so long as the reason is not that the employer coerced the missed break*. *White v. Starbucks Corp*., 497 F. Supp. 2d 1080, 1089 (N.D. Cal. 2007) ("the employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take them regardless of the reason"); *Carrasco v. C.H. Robinson Worldwide, Inc.*, No. 1:13-cv-01438-LJO-SAB, 2013 U.S. Dist. LEXIS 169515, at *26 (E.D. Cal. Nov. 27, 2013) ("Liability for failure to provide meal breaks and rest breaks is premised on the employer's actions, and not necessarily the employee's actions"); *Adams v Michaels Stores, Inc.*, No. CV09-1939-GW(AGRx), 2013 U.S. Dist. Lexis 202734, at *15-16 (C.D.Cal. Mar.4, 2013) (evidence did not "appear in the slightest to constitute an effort to 'undermine' [the] meal and rest break policy"). Meal and rest-break premiums are not compensation for time worked, but rather, for the *inability* to take breaks. That is why the question of *why* employees missed breaks is essential. Plaintiffs fail to acknowledge the distinction.

In sum, *Dukes* prohibits certification of questions that cannot produce common answers, and certification of meal and rest-break claims in the scenario presented here—where employees managed their own schedules outside the view of

their employer—is fundamentally at odds with *Dukes* because the questions ***cannot*** be answered in common. This is borne out by evidence showing that employees took breaks at various times for various purposes based on their own schedules, and they could not produce a uniform reason for missing breaks. This is unlike the cases Plaintiffs cite where a hospital understaffed nurses, but required at least two nurses to remain present, preventing meal breaks (*Alberts*), or where an employer required delivery drivers to follow strict pre-drawn delivery schedules and automatically deducted pay regardless whether they were taken (*Dilts*).[7]  Unlike those cases, putative class members here did *not* uniformly state they missed breaks because of a common policy or practice that objectively interfered with the ability to take a meal or rest break, such as discipline for taking breaks, imposed scheduling structures, or supervisors' uniform instructions to skip breaks.

**B.   *Dukes* requires more than *ipse dixit*.**

The district court ***said*** it reviewed all the evidence and reviewed the legal elements. But if a district court need only ***say*** that it reviewed all the evidence to

---

[7] Plaintiffs' citation to *Boyd v. Bank of America Corp.*, 300 F.R.D. 431 (C.D. Cal. 2014) is misplaced because that employer, unlike KeyPoint, did not dispute that class members "regularly work overtime without receiving premium pay or meal and rest periods." *Id.* at 437; *see Le v. Walgreen Co.*, No. CV 18-1548-DOC (ADS), 2020 U.S. Dist. LEXIS 121118, at *22 (C.D. Cal. Apr. 27, 2020) (distinguishing *Boyd* because "absent such a mandatory practice pressuring employees to forego breaks, an analysis of whether an employer is undermining its formal policy would necessitate an individualized inquiry").

meet the "rigorous analysis" requirement, such "magic" language would protect every class certification decision from the strictures of *Dukes*. That is an unserious proposition.

The Supreme Court in *Dukes* clearly intended that district courts ***actually demonstrate*** a rigorous analysis, not simply declare it. In the Tenth Circuit, district courts "must *characterize* the issues in the case as common or not, and then *weigh* which issues predominate." *CGC Holding Co., LLC. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (emphasis in original).

A rigorous analysis "characterizing" and "weighing"[8] the issues surely entails identifying the evidence and law framing the issues, for without evidence or legal support, there is no *issue* at all. *See McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (affirming denial of class certification where plaintiff identified a "common question" that was not at issue, as "resolving the proposed class members' claims doesn't center on any question common to the class, but instead turns entirely on facts specific to each individual class member's claim"); *see also Dukes*, 564 U.S. at 349 (the commonality rule "is easy to misread, since any competently crafted class complaint literally raises common 'questions.'"). Here, the district court plainly—and expressly—adopted the "competently crafted class

---

[8] KeyPoint does not contend that each element must be in common. Rather, each must be ***identified*** and ***weighed*** to determine predominance.

complaint" and failed to analyze the elements and evidence, particularly with respect to the meal and rest-break claims. *Contra Dukes*, 564 U.S. at 349. Had it done so, it would have seen that class members' meal and rest-break claims must be analyzed on an individual basis. Here, the "why" questions for missed breaks cannot be answered in common.[9]

Thus, the district court's opinion does not demonstrate sufficient analysis of California law to evaluate—based on the ***evidence***, not the ***pleadings***—whether class treatment was legally appropriate.

## C.    A non-existent "fact" is not a "common fact."

Another of the stratagems Plaintiffs employ is that commonality under *Dukes* can be created *ex nihilo* through sleight-of-hand. Plaintiffs fail to identify any unlawful written policy, and, to be clear, KeyPoint's policies are consistent with California law. Because they cannot, at no point do Plaintiffs cite to a KeyPoint policy, memorandum, or instruction regarding timekeeping or breaks as violative of California law, demonstrating that there ***cannot*** be a common issue. *McCaster*, 845 F.3d at 801 ("the common question they proposed for resolution is really no question

---

[9] Similarly, KeyPoint's alleged knowledge of off-the-clock work cannot be resolved in common. *Brinker*, 53 Cal. 4th at 1052 ("where no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they worked, and whether Brinker knew or should have known of their work.").

at all"). Instead, in a breathtaking example of a causal fallacy, Plaintiffs claim that the *absence* of such an unlawful policy is *itself* a source of common proof.[10] This is absurd. Plaintiffs cannot point to the lack of an unlawful policy to manufacture a common issue, because a lawful policy ***does not create an issue at all****. See id.* And here, Plaintiffs have posited no unlawful meal and rest-break policy.[11]

At best, Plaintiffs have posited a ***practice***, or a purported "*de facto* policy," but failed to provide evidence of one. *See Dukes*, 564 U.S. at 355 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters. . . [O]f course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action…").

Similar to *Dukes*, KeyPoint's policy establishes that Plaintiffs had discretion to schedule their own meal and rest breaks. Plaintiffs have provided no evidence that there were any unofficial memoranda, presentations, or cross-California instructions to the effect that employees should work off the clock or not take breaks. Plaintiffs have not proffered (or suggested the existence of) any widespread instructions by supervisors to skip breaks or not report when they cannot take breaks, let alone that

---

[10] If this were sufficient, every employee class claim should be certified, for they are always under the same employer policies.

[11] The *Pittmon* court rejected the same ploy. *Pittmon*, ECF No. 91 at 17.

supervisors knew this was allegedly occurring.[12] For their meal and rest-period claims, Plaintiffs have pointed to *one* source of proof: 64 cookie-cutter interrogatory answers by 64 litigants who asserted (with help from counsel) that they missed breaks for unstated reasons connected to their workload.[13] Those interrogatory answers, to the extent they were not recanted in depositions, do not state that employees were uniformly required to miss breaks and do not identify a single individual or circumstance—not even one—that interfered with their breaks. *See Dukes*, 564 U.S. at 358 (Even if every single one of [the anecdotal accounts offered by plaintiffs] is true, that would not demonstrate that the entire company 'operate[s] under a general policy of discrimination,' [citation] which is what respondents must show to certify a companywide class.").

Plaintiffs' evidence for the meal and rest-break claims is simply this and only this: a collection of employees violated KeyPoint's policy either by failing to arrange their schedules to take breaks, or not reporting when they were unable to do so.[14]

---

[12] Supervisors' knowledge of skipped breaks is not relevant unless the supervisors kept employees from taking breaks. That does not mean mere interruption. If a break was interrupted, a class member could immediately start the break over, given the class members' schedule flexibility. Plaintiffs would have to prove the supervisor or other circumstance ***prevented*** the break altogether, not just interrupted it.

[13] Notably, the *Pittmon* court deemed insufficient ***far*** more detailed employee declarations than the conclusory interrogatory answers presented here. (*Pittmon* ECF No. 69-11., Attach. 2)

[14] They do not state what consequences they believe they would have suffered for reporting missed breaks.

Plaintiffs characterize this evidence as an "unwritten but common policy." Resp. 35. But when a subset of self-interested employee-litigants uniformly say they violated company policy, the company "policy" never magically changed; they simply violated company policy.[15] *Brinker*, 53 Cal. 4th at 1040-41 ("the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations"). To be a company policy, it must come from ***the company***, not subordinate employees. *Dukes*, 564 U.S. at 359 (requiring "companywide" policy). Plaintiffs submit ***no*** such evidence.

Accordingly, Plaintiffs err when they state, "an answer of 'no' in response to whether KeyPoint has an unlawful policy . . . would certainly drive resolution of the litigation." Resp. 31. It would not. There is no unlawful policy alleged. KeyPoint acknowledges that if, *arguendo*, a rogue supervisor instructed a class member to skip meal periods, there could be liability on an individual basis. The lack of an unlawful

---

[15] Plaintiffs cite *Moore v. International Cosmetics & Perfumes, Inc.*, No. ED CV 14–1179 DMG, 2016 WL 7644849 (C.D. Cal. Mar. 17, 2016), where the district court found an unwritten unlawful policy, where the company's Rule 30(b)(6) witness apparently did not know the company had a meal-break policy (though the company amended his deposition testimony), other supervisors also stated that they were unaware of the policy, and it was never provided to all employees. There also was evidence of supervisors being instructed to discourage employees from taking breaks. Those are not the facts here. KeyPoint had a well-distributed lawful meal and rest-break policy, and there is no evidence of companywide behavior to undermine that policy.

policy does not mean there can be no liability—it just means the liability must be determined on an individual basis. Had this been a case where the *policy* could be unlawful—such as where employees are required to stay on the employer's premises for a meal period, for example—class certification could make sense. In the absence of such a policy, class certification is inappropriate. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (no common question without evidence that the entire class was subject to the same unlawful practice); *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010) (individualized inquiry was necessary to determine meal break liability because no common policy).

## V.    Plaintiffs' proposed use of representative proof violates KeyPoint's rights.

## A.    "Representative" proof must be statistically representative.

In response to KeyPoint's observation that Plaintiffs submitted no expert evidence substantiating that the California Plaintiffs were an appropriate (i.e., *random*) sample, Plaintiffs responded that they would simply establish an unlawful policy before a jury through "representative testimony." Resp. 42-45. But that would fail the due-process standards guaranteed by California law:

> A sample must be randomly selected for its results to be fairly extrapolated to the entire class… A 'random sample' is one in which each member of the population has an equal probability of being selected for inclusion in the sample."… The potential for bias arises because those who do not respond have *no* probability of inclusion in the sample… *Selection bias* occurs when members of the population are chosen based on a nonrandom criterion or are selectively included or excluded from the sample group. In litigation, selection bias can

19

occur when members of the population are allowed to opt out of the class.

*Duran v. U.S. Bank N.A.*, 59 Cal. 4th 1, 43 (2014) (citations omitted).

The *Duran* standard has been applied to class certification under Rule 23 for "representative testimony and random sampling." *Santos v. UPS*, No. 18-cv-03177-EMC, 2020 U.S. Dist. LEXIS 216176, at *9, 14 (N.D. Cal. Nov. 18, 2020) (without "statistical or other systemic evidence that Defendant engaged in a companywide policy of falsifying meal breaks," class certification was impermissible under *Duran*.).

Plaintiffs cite to *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 639 (S.D. Cal. 2010), asserting that it "reject[ed] the defendant's argument that use of representative testimony is violative of the defendant's due process rights." However, the district court would later note, in decertifying the meal period class, that Plaintiff's proposed random, representative testimony from 40 class members could result in a finding of liability to the class even in the presence of evidence that some class members were not denied breaks. *Dilts*, 315 F.R.D. at 594 n.1. [16]

The *Dilts* court went on to hold "[t]he Plaintiffs have not demonstrated a common policy that prohibited all class members from taking a timely first meal

---

[16] Accordingly, Plaintiffs' assertion that "what a jury may or may not ultimately find is irrelevant to class certification" fails. Resp. 38. ***What a jury should be allowed to ultimately find*** absolutely should impact class certification.

break…" and concluded, "the evidence regarding whether employees were provided with the opportunity to take a timely first meal break is not subject to class-wide resolution and more individualized questions predominate." *Id.* at 595.[17]

Plaintiffs have yet to suggest any scientifically valid method for evaluating these claims on a class basis.

**B.     Plaintiffs' proposed "representative" proof fails.**

Despite the absence of statistical validation, Plaintiffs allege "there is no reason that these issues could not be proven or defended based on representative proof." (Resp. pp. 42-43.) Plaintiff cites to *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300 (10th Cir. 2014), *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014), and *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017). These cases undermine, rather than support, the district court's certification order.

In *Garcia*, this circuit affirmed a class jury verdict because "the jury could reasonably rely on representative evidence to determine class-wide liability because Tyson failed to record the time actually spent by its employees on pre- and post-shift activities." *Garcia*, 770 F.3d at 1307. Here, employees affirmatively recorded and

---

[17] The earlier *Dilts* decision cited by Plaintiffs stated only that "the use of representative testimony is not *per se* violative of Defendant's due process rights" *Dilts*, 267 F.R.D. at 639 (emphasis added), which does not suggest that Plaintiffs' proposed representative testimony would respect KeyPoint's due process rights.

certified their work hours and breaks.[18] Moreover, these are California claims, not FLSA claims, and California claims are subject to *Duran's* strictures.

Second, the Ninth Circuit in *Jimenez* affirmed a class certification order where ***the district court denied certification of meal and rest-break claims*** because the plaintiff failed to identify a common unlawful policy "other than [plaintiff's] generic allegations that [employees] were overworked and did not have time for such breaks." *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 U.S. Dist. LEXIS 65328, at \*47 (C.D. Cal. Apr. 18, 2012). Moreover, the district court had "***struck some of the expert testimony offered by plaintiffs*** as insufficiently empirically supported" and ensured that accepted statistical analysis actually "***conformed to the legal questions*** to which the analysis was being applied[.]" *Jimenez*, 765 F.3d at 1168-69 (emphasis added).

Under *Jimenez*, then, representative proof ***should not*** be permitted here. The district court below did *not* accept empirically supported statistical analysis but instead certified a class of meal and rest-break claims based on "generic allegations that [class members] were overworked and did not have time for such breaks." In

---

[18] Plaintiffs' argument that "the *Kamar* decision does not foreclose certification of meal and rest-break claims where no business records showing actual break times exist," Resp. 33, is misplaced as well, as KeyPoint obtained certifications of breaks, and there is no competent evidence (as opposed to assertions in pleadings) that those records are generally inaccurate. *See, e.g.,* App. Vol. XXIV at 6214-15 (35:13-36:4), 6216 (40:4-10).

other words, it did ***exactly the opposite*** of what the *Jimenez* trial and appellate courts did. Finally, the *Jimenez* appellate decision affirmed *Duran's* requirements and held they were met. *Id.* at 1168. The district court here failed to ensure the proof offered would be statistically representative, instead accepting the pleadings and Plaintiffs' biased selection.

Plaintiffs also cite to the Sixth Circuit in *Monroe*, which affirmed ***FLSA, not Rule 23,*** certification and specifically held "we have refused to equate the FLSA certification standard for collective actions ***to the more stringent certification standard for class actions under Rule 23***." 860 F.3d at 405-06 (emphasis added). The Sixth Circuit *Monroe* decision does not aid Plaintiffs' argument here at all, makes no mention of due process rights, and of course does not comply with *Duran*. The citation to *Pierce v. Wyndham v. Vacation Resorts, Inc.*, 922 F.3d 741, 749 (6th Cir. 2019) fails for the same reason. Further, *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) underscores KeyPoint's due process argument: "The purpose of Rule 23's class certification requirements is to only certify class actions where the defendant will not be disadvantaged ***by the inability to address claims or assert defenses applicable against particular prospective class members***." *Id.* at 572 (emphasis added). Here, KeyPoint has such defenses against "particular" class members, because it is an individualized factual inquiry whether each class member

was truly prevented from taking each allegedly missed break. Such testimony cannot be extrapolated across the class.

Plaintiffs also contend that "whether some Plaintiffs were provided some breaks is really just a question of . . . damages," placing the cart before the horse. Resp. 33. The court would determine "damages" ***after liability has been proven as to everyone***. But the proposed proof of liability would be non-scientific "representative testimony" that does not take into account KeyPoint's individual defenses to liability. Again, "Plaintiffs here are attempting to paper over significant material variations." *Senne*, 315 F.R.D. at 583. As in *Dilts*, 315 F.R.D. at 594 n.1, Plaintiffs will attempt to prevail on a class-wide basis through "representative" testimony that, through extrapolation, could result in a finding of liability as to all class members despite evidence that those same class members were not in fact denied the opportunity to take breaks. *See Daye v. Cmty. Fin. Serv. Ctrs., LLC*, 313 F.R.D. 147, 174 (D.N.M. 2016) ("A trial by statistics [impermissible under *Dukes*] involves a small but representative sample of class members presenting evidence on individual questions in their own cases and then inviting the jury to extrapolate its conclusions from the sample to the entire class."). Plaintiffs' proposal does not justify certifying a class in the absence of an unlawful ***policy***.

## VI.  There are no grounds upon which to affirm the district court's order denying KeyPoint's motion to compel arbitration.

Plaintiffs' opposition to KeyPoint's arguments on the arbitration portion of this appeal are unpersuasive. For all the reasons described in KeyPoint's opening brief, the district court erred when it denied KeyPoint's motion to compel and the decision should be reversed. Three points in Plaintiffs' Response warrant mention here.

First, although Plaintiffs acknowledge that the Court has jurisdiction over this portion of the appeal, Resp. 2-3, they nevertheless argue that KeyPoint waived its ability to appeal denial of its motion to compel arbitration as to the 31 Arbitration Plaintiffs because KeyPoint did not seek reconsideration of whether the California Plaintiffs must arbitrate their California claims. *Id.* at 48 n.8. This is a nonissue. As the Supreme Court explained, a timely motion for reconsideration "renders an otherwise final decision of a district court not final for purposes of appeal." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019) (internal quotation marks omitted); *see also* Opening Br. 4 n.2. Plaintiffs would have the Court stray from the Supreme Court's direction and declare that a portion of the district court's order was final and appealable—thereby resulting in the purported waiver—even though other portions were nonfinal and not appealable. Not only would that have obvious detrimental effects on the efficient administration of appeals, it is contrary to precedent.

The case Plaintiffs offer is beside the point. In *Comité Fiestas de la Calle San Sebastián, Inc. v. Soto*, the notice of appeal referenced the district court's denial of a Rule 59(e) motion for reconsideration, but the opening brief challenged only portions of the underlying order. 925 F.3d 528, 531 (1st Cir. 2019). The jurisdictional question was whether the court could reach the merits of the district court's underlying summary-judgment order. *Id.* The court ruled that it could consider overlapping issues, but—as pertinent to the argument Plaintiffs make here—it would not consider a First Amendment retaliation claim that was not raised in the motion for reconsideration and therefore not part of the notice of appeal. *Id.* at 533. In other words, by appealing only the denied motion for reconsideration, the appellants in *Comité Fiestas* did not appeal the First Amendment retaliation claim. Here, by contrast, KeyPoint's notice of appeal explicitly appealed both the underlying order denying its motion to compel [Dkt. 294], and the reconsideration in the Order on Pending Motions [Dkt. 365]. App. Vol. XXX at 7902. The motion for reconsideration rendered the underlying order nonfinal for the purposes of appeal, and it is properly before the Court now.

Second, Plaintiffs fail in their attempt to manufacture ambiguity through the "notwithstanding" portion of the Pending Litigation Exception.  Resp. 49-51. Faced with a delegation clause substantively identical to the clear and unmistakable clause in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), Plaintiffs argue that the

26

entire Pending Litigation Exception is carved out of the Arbitration Decides Clause because the exception includes a clause saying, "notwithstanding any other language in this Agreement . . . ." Plaintiffs' interpretation is more than the words can bear. Quite simply, the delegation clause is clear and unmistakable and there is no rational reading of the Arbitration Agreement that carves out the Pending Litigation Exception.

The Fifth Circuit's decision after remand in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019) is distinguishable. There, the pertinent delegation to the arbitrator derived from the contract's incorporation of the American Arbitration Association (AAA) rules. But the scope of arbitration itself did not include actions seeking injunctive relief, and therefore it was not clear and unmistakable that the parties intended to delegate arbitrability. *Id.* at 281-82. By contrast, the parties here clearly and unmistakably delegated questions of "applicability" to the arbitrator and the Pending Litigation Exception is a matter of *applicability*. *E.g.* App. Vol. II at 325 ("this Agreement shall not ***apply*** to . . ."). Moreover, the Arbitration Agreement demonstrates the parties did carve out a portion of the Arbitrator Decides Clause, but ***not*** the Pending Litigation Exception. Namely, the second sentence of the Arbitrator Decides Clause says it "shall not apply to the 'Class Action Waiver' described below." *Id.* Had the parties intended to also

carve out the Pending Litigation Exception, they would have put it in the same place. But they didn't, and Plaintiffs' "notwithstanding" argument fails.

Third, KeyPoint's opening brief did not suggest that the district court relied on the "wholly groundless" exception as Plaintiffs characterize it. *Compare* Resp. 51 *with* Opening Br. 44. On the contrary, KeyPoint was making the point that courts—*all* courts—must enforce clear and unmistakable delegations even if they believe them to be wholly groundless, frivolous, or a waste of time and money. Opening Br. 44.

That is precisely the point in the end: as in *Rent-A-Center*, the Arbitrator Decides Clause here clearly and unmistakably delegates disputes about applicability to the arbitrator, the Pending Litigation Exception explicitly concerns whether or not the Arbitration Agreement applies, and therefore the delegation must be enforced.

## CONCLUSION

The common thread of this consolidated appeal is that the district court disregarded binding precedent in deciding both Plaintiffs' motion for Rule 23 class certification and KeyPoint's motion to compel arbitration. Both decisions should be reversed.

Wherefore, KeyPoint respectfully requests that this Court reverse the decisions of the district court and direct the district court to enter an order

(1) denying class certification under Rule 23, and (2) compelling the 31 Arbitration

Plaintiffs to arbitrate their state-law claims.

Dated: September 9, 2022.

Respectfully submitted,

*s/ Margaret Parnell Hogan*

Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mphogan@littler.com
        jharpole@littler.com
        tcarroll@littler.com

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN  55402
Tele: 612.313.7645
Fax: 612.677.3139
Email: jkalk@littler.com

Everett Clifton Martin
LITTLER MENDELSON, P.C.
633 West Fifth Street
Los Angeles, CA  90071
Tele: 213-443-4212
Fax: 213-443-4299
Email: cmartin@littler.com

*Attorneys for Defendant-Appellant KeyPoint*
*Government Solutions, Inc.*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6493 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

Dated: September 9, 2022.

*s/ Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mphogan@littler.com
        jharpole@littler.com
        tcarroll@littler.com

*Attorneys for Defendant-Appellant KeyPoint Government Solutions, Inc.*

## CERTIFICATE OF DIGITAL SUBMISSION

Undersigned counsel certifies that:

1.      No privacy redactions were necessary.

2.      Every document submitted electronically is an exact copy of the written document to be submitted to the clerk's office.

3.      The digital submission has been scanned for viruses with the most recent version of a commercial virus-scanning program (Windows Defender, Antivirus Version 1.371.442.0, last updated September 9, 2022) and, according to the program, is free of viruses.

Dated: September 9, 2022.

*s/ Margaret Parnell Hogan*
Margaret Parnell Hogan
Jennifer S. Harpole
Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: mphogan@littler.com
        jharpole@littler.com
        tcarroll@littler.com

*Attorneys for Defendant-Appellant KeyPoint Government Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2022, I electronically filed

the foregoing Defendant-Appellee's Reply Brief using the court's CM/ECF system,

which will send notification of such filing to the following:

Rachhana T. Srey
Anna Prakash
Caroline Elizabeth Bressman
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
srey@nka.com
cbressman@nka.com
aprakash@nka.com

_s/ Margaret Parnell Hogan_
Margaret Parnell Hogan